IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOCIEDAD CONCESIONARIA
METROPOLITANA DE SALUD S.A.

                  Petitioner,

     v.

WEBUILD S.P.A,

                  Respondent.

C.A. No. _____

## **PETITION TO CONFIRM ARBITRATION AWARD**

OF COUNSEL:

Rahim Moloo
Jason W. Myatt
Zachary Kady
Pablo Garrido
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Dated: October 18, 2023

Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Petitioner Sociedad
Concesionaria Metropolitana de Salud
S.A.*

Petitioner Sociedad Concesionaria Metropolitana de Salud S.A. ("SCMS" or "Petitioner"), by and through its attorneys, Richards, Layton & Finger, P.A. and Gibson, Dunn & Crutcher LLP, hereby alleges as follows:

## INTRODUCTION

1.      Pursuant to 9 U.S.C. § 207 of the Federal Arbitration Act, SCMS seeks confirmation, recognition, and enforcement of a final international arbitration award rendered on December 30, 2021 in *Sociedad Concesionaria Metropolitana de Salud v. Astaldi Sucursal Chile*, CAM Case No. 3586-19 (the "Arbitration") (the "Award"), and entry of judgment thereon pursuant to 9 U.S.C. § 13.  The Award was served on Astaldi on January 4, 2022, and on SCMS on January 6, 2022.  The Court of Appeals in Santiago, Chile issued a decision confirming the Award in relevant part on August 1, 2022 (the "Court of Appeals Decision") and on June 9, 2023 the Chilean Supreme Court declined to hear an appeal of the Court of Appeals Decision (the "Supreme Court Decision").  A copy of the Award, with a certificate of service on both Astaldi and SCMS, is attached as Exhibit 1 to the Declaration of Jason Myatt ("Myatt Decl.") filed with this Petition.[1] A copy of the August 1, 2022 Court of Appeals Decision is attached as Exhibit 2, and a copy of the Supreme Court Decision is attached as Exhibit 3.

2.      The Santiago, Chile-seated arbitration was conducted pursuant to the Arbitration Procedural Rules of the Arbitration and Mediation Center of the Santiago Chamber of Commerce (the "SCC"), effective as of December 1, 2012 (the "SCC Rules"), Ex. 4, as amended by the parties' agreement dated January 28, 2019, Ex. 5, and the arbitration was administered by the Santiago Center for Arbitration and Mediation (the "CAM").

---

[1]     Hereinafter, references to Exhibits and "Ex." refer to the exhibits attached to the Declaration of Jason Myatt. References to exhibits originally in a language other than English refer to the English translation thereof.

3.     The Arbitration was conducted pursuant to the terms of the Engineering, Construction and Execution of Services Contract for the Public Fiscal Work of the Félix Bulnes Hospital dated July 22, 2015, as amended April 27, 2016 (the "EPC Contract"), in which SCMS, as concessionaire, contracted with Astaldi Sucursal Chile ("Astaldi Chile") to construct the Félix Bulnes Hospital in Santiago, Chile (the "Project").  A copy of the EPC Contract is attached as Exhibit 6, along with an English translation of the arbitration agreement contained therein as well as the governing law provision, choice of law provision, limitation of liability provision and provisions regarding liability for fines and performance guarantees, which are excluded from the liability limitation provision.  A copy of the amendments to the EPC Contract agreed on April 27, 2016 is attached as Exhibit 7, along with an English translation of relevant amended provisions of the agreement, including the limitation of liability clause.

4.     At the time the parties entered into the EPC Contract and the Arbitration was commenced, Astaldi Chile was the Chilean branch company of Astaldi S.p.A., an Italian construction contractor.  Unlike an American subsidiary, a branch company like Astaldi Chile is not a separate legal entity from Astaldi S.p.A. (together with Astaldi Chile, "Astaldi").  Rather, under Italian law, branch companies may be organized for the purpose of doing business in a foreign jurisdiction and may operate under a name that is appropriate for that jurisdiction without creating a separate juridical entity, similar to a "doing business as" or "d/b/a" name in the United States.  *See* Ex. 8 (describing the ministerial process for registering a foreign branch company); Ex. 9.  The same is true under Chilean law.  *See* Ex. 10 (describing the ministerial process for registering a foreign branch company); Ex. 11 (explaining that Chilean law respects foreign companies and they can act in Chile by establishing a branch).  Astaldi Chile was such a branch company and thus legally indistinct from Astaldi S.p.A., as Astaldi S.p.A. confirmed when it

established its Astaldi Chile branch in 2008. Ex. 12 ("Astaldi S.p.A." "shall operate in Chile under the name ASTALDI SUCURSAL CHILE . . . .").

5. As relevant here, Astaldi has since been acquired by—and merged into—Webuild S.p.A. ("Webuild" or "Respondent").

6. Astaldi itself commenced the Arbitration and was on full notice of the proceedings. Astaldi received notice of SCMS's claims. Astaldi was represented by counsel and participated in all phases of the Arbitration.

7. Following the submission of written pleadings, documentary evidence, witness testimony, and expert evidence, the sole arbitrator, Mr. Claudio Undurraga Abbott (the "Arbitrator"), issued the reasoned Award rejecting Astaldi's claims against SCMS, finding that Astaldi had breached its obligations to SCMS, and ordering Astaldi to pay SMCS the following amounts (*see* Ex. 1 at 117):

| Harm to SCMS | Amount Awarded | Interest[2] |
|---|---|---|
| A. Damages arising from Astaldi's breaches of the EPC Contract | 3,291,846.20 Unidades de Fomento (UF)[3] | Current interest from the date the award became enforceable, at the rate for adjustable obligations published by the Chilean Financial Market Commission |

---

[2] The Award specifies that interest shall be calculated from the date the award became enforceable until the date of effective payment. *See* Ex. 1 at 117.

[3] The Unidad de Fomento (UF) is a non-circulating currency used as a unit of account in a variety of business and government transactions in Chile. The value of UF in Chilean Pesos is determined by the Chilean Central Bank and published in the Official Gazette on the ninth day of each month. Pursuant to the Award, payments denominated in UF are to be paid using the Chilean Peso on the day of payment. Ex. 1 at 117.

| Harm to SCMS | Amount Awarded | Interest[2] |
|---|---|---|
| B. Compensation for fines imposed on SCMS as a result of Astaldi's failures to comply with its obligations under the EPC Contract | 83,510.00 Unidad Tributaria Mensual (UTM)[4] | Current interest from the date the award became enforceable, at the rate for adjustable obligations published by the Chilean Financial Market Commission |
| C. Reimbursements for amounts paid by SCMS to Astaldi's subcontractors | 13,116,197,323.00 Chilean Pesos (CLP) | Current interest from the date the award became enforceable, at the rate for non-adjustable obligations published by the Chilean Financial Market Commission |
| | 3,118,251.00 Euros | Current interest from the date the award became enforceable, at the rate for Transactions Expressed in Foreign Currency in accordance with the provisions of Chilean Law 18,010 |

8.      Following Astaldi's challenge to the Award, the Chilean Court of Appeals seated in Santiago, Chile issued the Court of Appeals Decision, which confirmed the Award's determination of liability.

9.      The Court of Appeals Decision also accepted the Award's calculation of the actual harm to SCMS. However, the Court of Appeals Decision held that the amount awarded to SCMS in the Award needed to be reduced because Clause 21.2 of the EPC Contract, which caps most damages at 50% of the total Contract Price, should be applied to certain of the amounts the

---

[4]     The Unidad Tributaria Mensual (UTM) is another non-circulating currency used as a unit of account in Chile. It is generally used for the payment of taxes and fines and is calculated with reference to inflation. Each month, the Chilean Tax Authority publishes on its website (https://www.sii.cl/valores_y_fechas/utm/utm2023.htm) the value of UTM expressed in Chilean Pesos. Pursuant to the Award, payments denominated in UTM are to be paid using the Chilean Peso on the day of payment. Ex. 1 at 117.

Arbitrator awarded to SCMS. Ex. 2 at 29. Subject to this adjustment, the Award was confirmed and is enforceable.

10.    By its terms, the limitation of liability contained in Clause 21.2 of the EPC Contract applies only to amounts awarded to SCMS as damages arising from Astaldi's breaches of the EPC Contract (category "A" above), and does not affect those portions of the Award ordering Astaldi to reimburse SCMS for fines levied as a result of the failure to complete the Project on time (category "B" above) or payments SCMS made to Astaldi's subcontractors before the termination of the EPC Contract (category "C" above). *See* Ex. 7, Cl. 2.17 (amending Clause 21.2 of the EPC Contract); *see also* Ex. 6 (Cl. 10 (fines), Cl. 6.2 (performance guarantees), and Cl. 13.2 (obligation to post performance guarantees). These amounts are discussed in further detail below.

11.    Astaldi appealed the Court of Appeals Decision but the Chilean Supreme Court held that the Court of Appeals Decision was not subject to challenge and thus declared Astaldi's further appeal "inadmissible." Ex. 3 at 6. In any event, the Chilean Supreme Court noted that Astaldi's arguments were not supported by any evidence that could result in an order to alter the Award. *See id.*

12.    The Award is subject to immediate execution under Chilean law.

## THE PARTIES

13.    Petitioner SCMS is a Chilean company engaged in the construction and administration of public works concessions with its principal place of business at 7432 Mapocho Avenue, floor -1, Tower C, Cerro Navia, Santiago, Republic of Chile.

14.    Respondent Webuild is an Italian multinational construction company with its principal place of business at Via Adige, 19-20135, Milan, Italy. Webuild is registered to do business in the State of Connecticut where it has designated an agent to receive service of process,

with its principal place of business at 90 Fieldstone Court, Cheshire, CT, 06410. Webuild is

Astaldi's successor-in-interest. With respect to the Arbitration Award, Webuild stands in the shoes

of Astaldi following Astaldi's bankruptcy and merger into Webuild, which became effective on

August 1, 2021. Ex. 13; *see also* Ex. 14 at 27; Ex. 15 (explaining that Webuild would acquire the

assets and obligations of Astaldi, including liabilities associated with the Project); Ex. 16 at 2;

Ex. 17.

<u>**JURISDICTION AND VENUE**</u>

15.    This action to confirm, recognize, and enforce the Award arises under the

Convention on the Recognition and Enforcement of Foreign Arbitration Awards of June 10, 1958

(the "New York Convention"), as codified under the Federal Arbitration Act, 9 U.S.C. § 201, *et*

*seq.*, and specifically 9 U.S.C. §§ 201, 202, and 207. This Court has original jurisdiction over the

subject matter of this action pursuant to 9 U.S.C. §§ 203 and 207, and 28 U.S.C. § 1331. Venue

has been properly laid in this district pursuant to 28 U.S.C. § 1391(b)(3) and 9 U.S.C. § 204.

16.    This action relates to an award governed by the New York Convention because

both parties are foreign commercial entities engaged in international commerce, the underlying

business transaction between the parties that gave rise to the Arbitration and the Award constitutes

international commerce, and the Arbitration was held in the Republic of Chile, which is a party to

the New York Convention. *See* 9 U.S.C. § 202 ("an arbitration agreement or arbitral award arising

out of a legal relationship, whether contractual or not, which is considered as commercial,

including a transaction, contract, or agreement described in section 2 of this title, falls under the

Convention"); *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010) ("arbitration

agreements fall within the New York Convention if they arise from commercial, legal

relationships, such as commercial contracts, except when those relationships are entirely between

United States citizens and otherwise are domestic in nature") (citation omitted). Both parties' places of incorporation, the Republic of Chile and the Italian Republic, are contracting states to the New York Convention. This Court has original jurisdiction over this action. *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 2021 WL 3503805, at *4 (3d Cir. Aug. 10, 2021) ("9 U.S.C. § 203 . . . grants federal jurisdiction over confirmation proceedings of awards governed by the New York Convention"); *Invista S.A.R.L.*, 625 F.3d at 84 ("Actions under the New York Convention are deemed to arise under the laws and treaties of the United States.") (internal citation omitted).

17.     This court has *quasi in rem* jurisdiction over Respondent because Respondent is the sole owner of Webuild US Holdings, Inc. Ex. 14 at 477; Ex. 18 at 365. Webuild US Holdings, Inc. is a Delaware Corporation, Ex. 19, whose shares are deemed to be located in Delaware. *See* 8 *Del. C.* § 169 ("For all purposes of title, action, attachment, garnishment, *and jurisdiction* of all courts held in this State, . . . the situs of ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State.") (emphasis added); *Alberta Sec. Comm'n v. Ryckman*, No. N13J-02847, 2015 WL 2265473, at *10 (Del. Super. Ct. May 5, 2015), *aff'd*, 127 A.3d 399 (Del. 2015) (holding that Delaware has an interest in disputes in which a party seeks to collect on a judgment by enforcing against the debtor's interest in a Delaware corporation); *Cerner Middle E. Ltd. v. iCapital, LLC*, 939 F.3d 1016, 1019 (9th Cir. 2019) ("Quasi in rem jurisdiction exists when a plaintiff seeks to enforce a judgment against a defendant's in-state property."). Following recognition of the Award and entry of judgment, Webuild's shares in Webuild US Holdings, Inc. will be subject to attachment in Delaware pursuant to, *inter alia*, 10 *Del. C.* § 5031 and 8 *Del. C.* § 324.

18.     Venue is appropriate in this Court because Respondent is subject to personal jurisdiction in this district, and claims may be brought in this jurisdiction with respect to the

property in question, *i.e.*, Respondent's shares in Webuild US Holdings, Inc. 28 U.S.C. § 1391(b)(3).

## RELEVANT FACTS

19.     In February of 2014, the Chilean Ministry of Public Works, a government agency, awarded a concession to Astaldi Concessioni S.R.L., and then entered into a concession contract (the "Concession Contract") with that same entity to carry out, *inter alia*, the design, construction, and operation of the Félix Bulnes Hospital in Santiago, Chile.  Ex. 1 at 23.  In June of 2014, Astaldi Concessioni S.R.L. formed Petitioner SCMS as a standalone entity and assigned the Concession Contract to SCMS.  *Id.*  Shortly thereafter, on July 1, 2014, SCMS and Astaldi Chile entered into a Preliminary Services Agreement for the preparation of the construction Project while the EPC Contract was being prepared and negotiated.  *Id.*  The EPC Contract was executed on July 22, 2015 and amended on April 27, 2016.  *Id.*

20.     Pursuant to the EPC Contract, Astaldi was obligated to complete, with limited exceptions, all construction work required under the Concession Contract on a back-to-back basis. In other words, Astaldi assumed SCMS's design and construction obligations under the Concession Contract, including the obligation to coordinate work performed by subcontractors, acquire necessary permits, acquire all necessary goods and services, and to assume the costs of the work and services necessary to complete the Project by January 31, 2019.  *See id.* at 27.

21.     On September 28, 2018 (the "Cut-Off Date") Astaldi informed SCMS that it had commenced bankruptcy and restructuring proceedings in Italy (the "Italian Restructuring Proceedings") and conveyed to SCMS and the Chilean Ministry of Public Works a request for a "*concordato preventivo con continuità aziendale*" in accordance with Italian law (the "Concordato"), which restricted Astaldi's payments of certain debts.

22.     This notice precipitated a marked slowdown in construction works.  Subcontractors and their workers refused to advance the Project on account of Astaldi's failure to pay past-due amounts and the likelihood that Astaldi would be unwilling or unable to pay any future debts as a result of the Italian Restructuring Proceedings and Concordato.  *Id*. at 47.

23.     Astaldi requested on October 8, 2018 that SCMS pay the subcontractors' invoices during the month of October while Astaldi worked to "regularize [its] economic situation."  *Id*. This situation repeated itself both in November and December of 2018.  *Id.* at 112.  SCMS therefore paid the subcontractors and, to protect itself from incurring significant economic harm, SCMS collected on certain surety bonds provided by Astaldi at the outset of the Project.  *Id.* at 47.

24.     Despite SCMS providing all necessary economic support and assurances, it was apparent to SCMS that Astaldi could not, and would not, complete the Project on time—*i.e.*, by January 31, 2019.

25.     Accordingly, on December 4, 2018, SCMS notified Astaldi of its breaches of the EPC Contract and requested that Astaldi provide a remediation plan, which Astaldi provided four days later.  *Id.* at 58.  Following consultation with an independent engineer, SCMS determined that Astaldi's proposed remediation plan was not satisfactory and did not explain how the work would be completed on time.  *Id.*  SCMS therefore terminated the EPC Contract by means of a memorandum dated January 2, 2019.  *Id.* at 6, 23.

## **THE ARBITRATION**

26.     Following the termination of the EPC Contract, Astaldi initiated arbitration proceedings before the CAM pursuant to the terms of the EPC Contract seeking damages and specific performance.  SCMS initiated parallel proceedings against Astaldi, seeking a declaration

that Astaldi had materially breached the EPC Contract and demanding damages arising from Astaldi's breach.

27.    The EPC Contract provides for resolution of all disputes related to the agreement via binding arbitration before the CAM.  Ex. 6, Cl. 21.3–21.4.  Specifically, Clauses 21.3 and 21.4 of the EPC Contract provide:

> Twenty-one / Three Disputes
>
> For purposes of this clause, if one of the Parties claims a dispute exists with respect to its rights or duties under this contract, then a controversy shall be regarded as having arisen.  All controversies shall be submitted to each Party's Executive Director, General Manager, or their equivalents (the "Executives") for resolution. The Executives shall make all possible efforts to resolve the dispute to both Parties' satisfaction.
>
> Twenty-one / Four Arbitration
>
> If the Executives do not resolve the controversy within 45 days of it being submitted to them, such matter or controversy shall be resolved via arbitration in accordance with the regulations of the Santiago Chamber of Commerce's Center for Mediations and Arbitrations.  These regulations are set forth in the public document given on December 10, 1992, in the Santiago office of Notary Sergio Rodriguez Garces, as amended by the public document given on August 18, 1995, in the  Santiago office of Notary Raul Undurraga.  The Parties being advised and having accepted these terms, the regulations are regarded as an integral part of this contract.  The Parties grant a special, irrevocable power of attorney to the Chamber of Commerce so that, upon request of either party, it may designate an arbitrator from among the members of the arbitral corps of the aforementioned Center for Arbitrations and Mediations.  Decisions of the arbitrator shall not be appealable; accordingly, the Parties expressly agree to waive all appeals.  The arbitrator shall be empowered to resolve any matter related to his or her competence and/or jurisdiction.  Neither the duties arising under this contract nor those pertaining to the Ministry of Public Works or another governmental authority shall be suspended during the pendency of an arbitration proceeding.

28.    On January 3, 2019, the CAM appointed the Arbitrator to Case CAM No. 3586-19, and on January 25, 2019, the Arbitrator accepted the appointment.  Ex. 1 at 1.  On January 9, 2019,

the Arbitrator was appointed to Case CAM No. 3584-19, and on January 25, 2019, the Arbitrator accepted the appointment. *Id.* The two cases were joined for the purposes of administration and judgment. *Id.*

29.     Chilean law governed the merits of the dispute. Ex. 6, Cl. 4.

30.     Each party submitted a detailed statement of claim setting forth the legal and factual bases for its allegations. *See* Ex. 1 at 2–9 (summarizing Astaldi's Statement of Claim), 13–16 (summarizing SCMS's Statement of Claim). The parties also submitted detailed answers and defenses to the claims alleged against them. *See id.* at 16–18 (summarizing Astaldi's answer and defense to SCMS's claims), 9–13 (summarizing SCMS's answer and defense to Astaldi's claims).

31.     In accordance with the SCC Rules, a conciliation was held on June 11, 2019, but the parties failed to reach an agreement to settle their dispute. *Id.* at 18.

32.     The Arbitrator thereafter received into evidence both parties' documentary evidence, *id.* at 18–20, testimony of relevant fact witnesses provided by both parties, *id.* at 20–21, and expert evidence submitted by both parties, *id.* at 21–22. The Arbitrator conducted oral examinations of the parties' witnesses and conducted a personal inspection of the construction site. *Id.* at 21–22, 56.

33.     After fully considering the claims and defenses raised by both SCMS and Astaldi, the Arbitrator found that (i) SCMS performed its contractual obligations, (ii) Astaldi's failure to perform constituted a material breach; (iii) SCMS properly terminated the EPC Contract; and (iv) SCMS was entitled to compensation as a result of Astaldi's breaches. The amounts awarded to SCMS fall into three categories: (a) damages arising from Astaldi's breaches of the EPC Contract; (b) reimbursement for fines incurred as a result of Astaldi's conduct; and (c) reimbursement for amounts SCMS paid to Astaldi's sub-contractors to Astaldi's resolve pre-bankruptcy debts. Ex. 1 at 117.

34.   Specifically, the Arbitrator determined that Astaldi was liable to SCMS for:

**a.  Contract damages**:

| Claim | Amount Awarded |
|---|---|
| SCMS assumption of Astaldi's debts to subcontractors after the EPC Contract termination (*see id.* at 89) | UF 252,740.29 |
| Fees paid to LyD, the contractor that replaced Astaldi, to complete the Project (*see id.* at 92) | UF 799,311.05 |
| Costs for contracts and purchase orders incurred by LyD and invoiced to SCMS to complete the Project (*see id.* at 96) | UF 749,830.48 |
| Excess advance payments for medical equipment expenses (*see id.* at 105) | UF 284,285.90 |
| SCMS payments to Astaldi's medical equipment suppliers in satisfaction of Astaldi's obligations (*see id.* at 105) | UF 712,560.40 |
| Administrative overhead expenses associated with the 14-month delay to the Project (*see id.* at 107) | UF 9,737.08 |
| Fees and increased interest rates associated with new financing required as a result of Astaldi's breach (*see id.* at 110) | UF 473,756.00 |
| Damages associated with delay in completing the Project (*see id.* at 114) | UF 9,625.00 |
| **Total** | **UF 3,291,846.20** |

b. **Reimbursement for fines** imposed as a result of Astaldi's conduct and failure to complete the project on time:

| Claim | Amount Awarded |
|---|---|
| Fines imposed on SCMS as a result of Astaldi's failures to comply with the information and timely completion requirements of the bidding terms and conditions associated with the Project (*see id.* at 110) | **UTM 83,510.00** |

c. Reimbursement for SCMS's payment made **before the termination of the EPC Contract**:

| Claim | Amount Awarded |
|---|---|
| Reimbursements for SCMS's payments to Astaldi's suppliers and subcontractors (*see id.* at 114) | **CLP 13,116,197,323.00** |
| Reimbursements for SCMS's payments to Astaldi's suppliers and subcontractors (*see id.* at 114) | **€ 3,118,251.00** |

35.      The Award was the product of a full and fair proceeding in which Astaldi participated fully through counsel.  The 15-calendar day time limit under the SCC Rules for either party to request modification of clerical, typographical, or computational errors in the Award has expired.  *See* Ex. 4, Art. 39.

## ASTALDI'S CHALLENGES TO THE AWARD

36.      On January 10, 2022, Astaldi filed an extraordinary appeal seeking to challenge or modify the Award before the Court of Appeals in Santiago, Chile.  Astaldi challenged the Award on multiple substantive grounds and requested that the Court of Appeals issue a new decision accepting Astaldi's original claims against SCMS.  *See* Ex. 2 at 1.  Astaldi also requested that the Court of Appeals reject and vacate each of the Award's conclusions, including the award of damages to SCMS.  *See id.* at 1–2.

37.    The Court of Appeals issued its decision on August 1, 2022.  Following a detailed review of the Award, the Court of Appeals found that there were no grounds for the Award to be revoked, annulled or set aside.  *See id.* at 25–29.

38.    However, the Court of Appeals did find that the Arbitrator failed to apply the limitation of liability provision contained at Clause 21.2 of the EPC Contract.  Ex. 2 at 25, 29. Subject to various exceptions, including (i) fines imposed for failures to comply with the terms of the EPC Contract and (ii) SCMS's exercise of its rights pursuant to performance guarantees posted by Astaldi, Clause 21.2 of the EPC Contract caps recoverable damages at 50% of the Contract Price.  *See* Ex. 7, Cl. 2.4 (amending Cl. 6.2 of the EPC Contract), 2.8 (amending Cl. 10 of the EPC Contract), 2.11 (amending Cl. 13.2 of the EPC Contract), 2.17 (amending Cl. 21.2 of the EPC Contract); Ex. 6, Cls. 6.2, 10, 13.2, 21.2.[5]  The Contract Price is a defined term and is fixed in the EPC Contract as UF 4,694,668, plus value added tax ("VAT") at a rate of 19%, Ex. 6, Cl. 6.1; Ex. 20, which brings the total Contract Price to UF 5,586,654.92.

39.    By modifying the Award to the extent the Arbitrator improperly disregarded Clause 21.2's limitation of liability, the Court of Appeals Decision reduced the award of contract damages from UF 3,291,846.20 to UF 2,793,327.46 (50% of the Contract Price), which is equivalent to US $111,495,053.00 as of September 29, 2023.  *See* Ex. 21.[6]

---

[5]    The original text of Clause 2.21 of the EPC Contract capped damages at 30% of the Contract Price; the parties later amended this limitation to 50% on April 27, 2016.  Ex. 7, Cl. 2.17.  In that same amendment, the parties agreed that, in addition to excluding fines imposed for failures to comply with project requirements and timelines (as agreed in the original EPC Contract), the limitation of liability would not apply to SCMS's execution of performance guarantees.  *See id.*

[6]    SCMS can provide the Court such updated values of the Unidad de Fomento, expressed in United States Dollars, as may be necessary to assist the Court.

40.     With the above modification to the damages owed to SCMS, and subject to the addition of interest, the Award is valid and subject to immediate execution.[7]

41.     Astaldi subsequently filed a further extraordinary appeal to the Chilean Supreme Court seeking similar modifications of the Award as sought in the court below.  *See*, Ex. 22 at 1. The Chilean Supreme Court declared Astaldi's extraordinary appeal "inadmissible" and stated there were no grounds for challenging the Court of Appeals' decision.  *See* Ex. 3 at 6–7.

42.     The Award is no longer properly subject to any attempt to vacate it.

### AMOUNTS OWED TO SCMS UNDER THE AWARD

43.     Taking account of the Court of Appeals Decision, and applying interest as set out in the Award, SCMS is owed the following amounts:

---

[7]    For the avoidance of doubt, the obligation to pay SCMS **UTM 83,510.00** as compensation for fines imposed for failure to comply with project requirements and timelines is excluded from the limitation of liability in Clause 21.2 and thus remains unchanged.  SCMS's right to execute on performance guarantees issued by Astaldi to cover payments of **CLP 13,116,197,323.00** and **€ 3,118,251.00** to Astaldi's subcontractors is likewise excluded from the limitation of liability in Clause 21.2 and thus remains unchanged.

| A.  Contract damages | | | | |
|---|---|---|---|---|
| Amount Awarded | As Modified By Limitation of Liability | Value in USD | Interest Rate | Total (USD) |
| UF 3,291,846.20 | UF 2,793,327.46 | $111,495,053[8] | 7.18%[9] | $113,951,487[10] |

| B.  Reimbursement for fines imposed as a result of Astaldi's conduct and failure to complete the project on time | | | | |
|---|---|---|---|---|
| Amount Awarded | As Modified By Limitation of Liability | Value in USD | Interest Rate | Total (USD) |
| UTM 83,510.00 | N/A | $5,843,232[11] | 7.18%[12] | $5,971,968[13] |

| C. Reimbursements for amounts paid by SCMS to Astaldi's subcontractors before termination of the EPC Contract | | | | |
|---|---|---|---|---|
| Amount Awarded | As Modified By Limitation of Liability | Value in USD | Interest Rate | Total (USD) |
| CLP 13,116,197,323 | N/A | $14,463,629[14] | 6.32%[15] | $16,033,879[16] |
| €3,118,251 | N/A | $3,300,357[17] | 2.61%[18] | $3,448,327[19] |

---

[8]   Values in USD have been calculated using the value of UF, expressed in Chilean Pesos, published by the Chilean Central Bank for September 29, 2023 and the exchange rate for Chilean Pesos to USD published by the Chilean Central Bank for September 29, 2023.  *See* Ex. 21.

[9]   Current interest rate for adjustable obligations published by the Chilean Financial Market Commission as of June, 2023, the date the Chilean Supreme Court rejected Astaldi's appeal and the Award became enforceable.

[10]   Interest applied from June 9, 2023—the date the Chilean Supreme Court rejected Astaldi's appeal and the Award became enforceable—through September 29, 2023.  The amount owed to SCMS should be updated to account for additional interest as of the date the Court enters judgment on the Award.

[11]   Values in USD have been calculated using the value of UTM, expressed in Chilean Pesos, published by the Chilean Tax Authority for September 29, 2023 and the rate of exchange for Chilean Pesos to USD published by the Chilean Central Bank for September 29, 2023.  *See* Ex. 21.

[12]   Current interest rate for adjustable obligations published by the Chilean Financial Market Commission as of June, 2023, the month the Chilean Supreme Court rejected Astaldi's appeal and the Award became enforceable.

[13]   Interest applied from June 9, 2023—the date the Chilean Supreme Court rejected Astaldi's appeal and the Award became enforceable—through September 29, 2023.  The amount owed to SCMS should be updated to account for additional interest as of the date the Court enters judgment on the Award.

[14]   Values in USD have been calculated using the exchange rate for Chilean Pesos to USD published by the Chilean Central Bank for September 29, 2023.  *See* Ex. 21.  SCMS can provide the Court such updated values of the Chilean Peso, expressed in United States Dollars, as may be necessary to assist the Court.

[15]   Current interest rate for non-adjustable obligations in excess of UF 5,000 published by the Chilean Financial Market Commission as of January 10, 2022, the date this portion of the Award became enforceable as it was not challenged by Astaldi.

[16]   Interest applied from January 10, 2022—the date this portion of the Award became enforceable as it was not challenged by Astaldi—through September 29, 2023.  The amount owed to SCMS should be updated to account for additional interest as of the date the Court enters judgment on the Award.

44.    SCMS is entitled to entitled to interest at the rate of 7.18% on the amounts awarded for components A and B from the date the award became enforceable until the date of effective payment.  *See* Ex. 1 at 117.  SCMS is entitled to interest at the rate of 6.32% on the amount in component C awarded in Chilean pesos and at a rate of 2.61% for the amount in component C awarded in Euros, from the date the award became enforceable until the date of effective payment. *See id.*

45.    In total, with interest through September 29, 2023, SCMS is owed **$139,405,661.** As discussed below, following its merger with Astaldi, Webuild became liable for the full amount owed to SCMS, inclusive of interest through September 29, 2023.

## THE AWARD SHOULD BE CONFIRMED, RECOGNIZED, AND ENFORCED

46.    The review of international arbitration awards is governed by the New York Convention, as implemented by the Federal Arbitration Act.  *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 290 (3d Cir. 2010), *as amended* (Dec. 7, 2010).  Under 9 U.S.C. § 207, any party to an international arbitration may apply to a federal court for an order confirming the award resulting from the arbitration.

47.    "Under the [FAA], a court's function in reviewing a commercial arbitration award is 'narrow in the extreme' and is 'extremely deferential.'"  *Freres v. Solazyme, Inc.*, 154 F. Supp.

---

[17]    Values in USD have been calculated using the exchange rate for USD to Euros as published by the Federal Reserve Board for September 29, 2023 (available at https://www.federalreserve.gov/releases/ h10/hist/dat00_eu.htm). SCMS can provide the Court such updated values of the Euro, expressed in United States Dollars, as may be necessary to assist the Court.

[18]    Current interest rate for obligations expressed in foreign currency, published by the Chilean Financial Market Commission as of January 10, 2022, the date this portion of the Award became enforceable as it was not challenged by Astaldi.

[19]    Interest applied from January 10, 2022—the date this portion of the Award became enforceable as it was not challenged by Astaldi—through September 29, 2023.  The amount owed to SCMS should be updated to account for additional interest as of the date the Court enters judgment on the Award.

3d 68, 74 (D. Del. 2015), *aff'd sub nom. Roquette Freres S.A. v. Solazyme, Inc.*, 673 F. App'x 219 (3d Cir. 2016) (quoting *Amalgamated Meat Cutters v. Cross Bros. Meat Packers, Inc.*, 518 F.2d 1113, 1121 (3d Cir. 1975)); *see also Carl Zeiss Vision, Inc. v. Refac Holdings, Inc.*, No. CV 11513-VCS, 2017 WL 3635568, at *4 (Del. Ch. Aug. 24, 2017) (acknowledging that courts "give practically the highest degree of deference, short of 'untouchable,' recognized in the law to an arbitrator's award"); *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.,* 409 F.3d 574, 578 (3d Cir. 2005) ("Review of arbitration awards under the FAA is 'extremely deferential' [and] [v]acatur is appropriate only in 'exceedingly narrow' circumstances, such as where arbitrators are partial or corrupt, or where an arbitration panel manifestly disregards, rather than merely erroneously interprets, the law.")  This limited review reinforces "the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings."  *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 311 (3d Cir. 2006), *as amended on reh'g* (Sept. 28, 2006).

48.    Where, as here, the Court is asked to confirm an award rendered under the laws of a foreign jurisdiction, "the grounds for relief enumerated in Article V of the [New York] Convention are the only grounds available for setting aside an arbitral award."  *Id.* at 308.  *Accord Ario*, 618 F.3d at 291.  Thus, "[a]s a general rule, under the Convention, a district court must confirm an arbitral award unless the court finds that one of seven vacatur grounds specified in the Convention applies to the award."  *MarkDutchCo B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 325 (D. Del. 2019).

49.    None of the grounds for vacatur specified in the Convention apply here.[20]

---

[20]    "The vacatur grounds specified in the Convention are: [1] The parties to the agreement [giving rise to the arbitration] . . . were under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country

50.    The Award is well reasoned and reflects the result of a fair procedure in which all sides had a full and fair opportunity to present their positions through written submissions, documentary evidence, witness testimony where both parties had the opportunity to cross-examine the witnesses, expert testimony, several oral hearings for witness testimony and review of documents, and a further hearing at which the parties presented closing arguments. *See generally,* Ex. 1; *see also* Ex. 23 (July 31, 2019 Procedural Decision setting hearing schedule); Ex. 24 (October 29, 2019 Procedural Decision adding additional hearings to the hearing schedule).

51.    The Court of Appeals Decision further confirmed that, "throughout his decision," the Arbitrator approached and decided the issues "in a reasoned manner, making an assessment of the evidence provided, arriving at his conviction within the parameters required by this type of proceedings," *i.e.*, an arbitration. Ex. 2 at 28.

52.    SCMS's request is timely, as it is made within three years after the Award was issued. 9 U.S.C. § 207.

## WEBUILD'S LIABILITY FOR ASTALDI'S OBLIGATIONS

53.    Following Astaldi's bankruptcy, the company was merged into Webuild, an Italian multinational construction company pursuant to a merger agreement signed on July 29, 2021,

---

where the award was made; ... [2] The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; ... [3] The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; ... [4] The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; ... [5] The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made ... [6] The subject matter of the [dispute] is not capable of settlement by arbitration under the law of [the country where recognition and enforcement is sought]; [and] [7] The recognition or enforcement of the award would be contrary to the public policy of [the country where recognition and enforcement is sought]." *MarkDutchCo*, 411 F. Supp. 3d at 325.

Ex. 13 at 1, and effective as of August 1, 2021 (the "Merger Agreement"), *id.* at 7.  *See also* Ex. 14 at 27.  As of that date, Astaldi's construction, infrastructure, engineering, maintenance, facility management and management of complex systems activities, among others, were transferred to Webuild, which continues to operate Astaldi's prior businesses.  Ex. 14 at 8.

54.    Webuild assumed liability for Astaldi's post-bankruptcy debts to SCMS in the Merger Agreement and in accordance with the merger plan approved by board resolutions of both Astaldi and Webuild (the "Merger Plan").  Ex. 13, at 7 and Appendix C.  The Merger Agreement specifically provides, in relevant part, that "[a]s a result of the Spinoff, all Astaldi's equity interests, key productive assets, contracts (including, *inter alia*, employment contracts) and liabilities (as a result of the debt discharge resulting from the implementation of the [Concordato]) relating solely to the Spun-Off Assets will be assigned to Webuild."  Ex. 13 at 7–8.

55.    The Spun-Off Assets include Astaldi's interests and liabilities arising from the EPC Contract with SCMS.  Ex. 13, Appendix D (listing the EPC Contract among the "Spun-Off Assets").

56.    Webuild's assumption of Astaldi's liability to SCMS was required under Italian law.  Neither Astaldi nor Webuild sought to terminate the EPC contract, and it therefore remained in effect following Astaldi's initiation of insolvency proceedings.  *See* Ex. 25 (explaining that the debtor has the power to request the termination of any contract entered into before a debtor seeks bankruptcy protection at the start of the bankruptcy proceedings and that, if it does not do so, the contract remains valid and enforceable as of the date the debtor initiates bankruptcy or restructuring proceedings, as was the case with the EPC Contract here).

57.    Creditors that are parties to such contracts are entitled under Italian law to be compensated as though any credit arising from the contract arose after the insolvency Cut-Off Date.  Stated differently, debtors remain liable for obligations arising out of continuing agreements

such as the EPC and liabilities arising from such agreements are considered to be post-bankruptcy obligations. Ex. 17 (". . . claims for compensation relating to past defaults, but which definitively manifest themselves during the course of the procedure, are not subject to reductions in bankruptcy").

58.     The amounts awarded to SCMS arise from SCMS's decision to terminate the EPC Contract on January 2, 2019, more than three months after the Cut-Off Date for debts to be included in the *Concordato* established in connection with Astaldi's insolvency proceedings, and from the arbitration Award itself. *See* Ex. 1 at 23. Thus, consistent with Italian law, the Merger Plan provides that "additional parties whose claims are finally ascertained after the spinoff shall be satisfied in cash by Webuild." Ex. 13 at 14, Appendix C.

59.     In short, Webuild assumed all of Astaldi's liabilities with respect to the EPC Contract. Accordingly, Webuild, as Astaldi's successor-in-interest and pursuant to the Merger Agreement and Italian law, is liable to SCMS for all amounts owed under the Award.

60.     Webuild's public filings confirm it stands in the shoes of Astaldi with respect to the amounts owed under the Award. Specifically, Webuild's 2021 and 2022 Annual Reports describe the Arbitration and Astaldi's appeal to the Court of Appeal in Santiago, Chile. Ex. 14 at 271; Ex. 19 at 234. The Annual Reports go on to advise investors that, based on "the opinions of the [Webuild] Group's legal advisors, the directors [of Webuild] deem the risk of losing the [appeal] is possible, leading to additional costs to those already provided for in [Webuild's] consolidated financial statements." Ex. 14 at 271; Ex. 18 at 234.

61.     The shares of Webuild US Holdings, Inc. are the subject of this recognition and enforcement action. Webuild US Holdings, Inc., a Delaware corporation, is wholly and directly owned by Webuild. *See* Ex. 14 at 477 (confirming Webuild S.p.A.'s 100% direct interest in

Webuild US Holding, Inc.); Ex. 18 at 365 (same); Ex. 19 (amending the Delaware registration of Salini-Impreglio US Holdings, Inc. to reflect its new name: Webuild US Holdings, Inc.).

## COUNT ONE
### (Confirm, recognize, and enforce the Arbitration Award under the Federal Arbitration Act)

62.　Petitioner repeats and realleges paragraphs 1 through 61 above, as if fully set forth herein.

63.　The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

64.　No grounds for refusal or deferral of recognition or enforcement of the Award are present here.  9 USC § 207, New York Convention Article V.

65.　Under the terms of the Award, Petitioner is entitled to interest at a rate of 7.18% on $117,338,285, the amount awarded for components A and B, running from June 9, 2023 (the date Astaldi's appeals were exhausted and the Award became enforceable) until the date of full payment of the awarded sums, which amounts to $119,923,455 as of September 29, 2023 (the last business day of the month prior to the filing of this Petition).

66.　Under the terms of the Award, Petitioner is entitled to interest at a rate of 6.32% on $14,463,629 and 2.61% on $3,300,357, the amounts awarded for component C, running from January 10, 2022 (the date this portion of the Award became enforceable as it was not challenged by Astaldi) until the date of full payment of the awarded amounts, which amounts to $19,482,206.68 as of September 29, 2023 (the last business day of the month prior to the filing of this Petition).

67.     Therefore, pursuant to 9 U.S.C. § 207, SCMS is entitled to a judgment in its favor and against Webuild in the amount of $139,405,661, inclusive of interest through September 29, 2023.

68.     For the reasons stated herein, the Court should issue an order recognizing and confirming the Award and direct that judgment be entered thereon.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein, Petitioner SCMS respectfully requests that this Court:

A.     Enter an order recognizing and confirming the Award;

B.     Enter judgment in conformance with the Award in the amount of $139,405,661, inclusive of interest through September 29, 2023, with additional interest to be added through the date of judgment at the rate of 7.18% with respect to $117,338,285, 6.32% with respect to $14,463,629 and 2.61% with respect to $3,300,357.

C.     Grant any other relief that this Court, in the interests of justice, deems necessary and proper including Petitioner's costs and reasonable attorneys' fees incurred in bringing this proceeding.

|                                    | */s/ Travis S. Hunter*             |
|------------------------------------|------------------------------------|

OF COUNSEL:                         Travis S. Hunter (#5350)
                                    RICHARDS, LAYTON & FINGER, P.A.
Rahim Moloo                         One Rodney Square
Jason W. Myatt                      920 North King Street
Zachary Kady                        Wilmington, Delaware  19801
Pablo Garrido                       (302) 651-7700
GIBSON, DUNN & CRUTCHER LLP         hunter@rlf.com
200 Park Avenue
New York, New York  10166           *Attorneys for Petitioner*
(212) 351-4000                      *Sociedad Concesionaria Metropolitana de*
                                    *Salud S.A.*

Dated:  October 18, 2023